All right, our final case this morning is 19-4052 Scott v. Wingate Wilderness Therapy. Mr. Luthi? Your Honors, may it please the Court, I am John Luthi. I represent Jacob Scott. Jake has traveled from Virginia to be in attendance today. He's accompanied by his mother, Kay Scott. I thought, given the unique setting for argument today and my unique position as a Ash County native, Utah State University alum, and Ash County Bar Association member, that on behalf of those constituencies, we're grateful that the Court would give this opportunity to our community and students. As the Court knows, Jacob Scott sustained a life-altering knee injury when he was enrolled as a student with Wingate Wilderness Therapy. Wingate had told Jacob's mother that wilderness therapy is not health care, that her health insurance wouldn't cover it. And as alleged, Wingate then negligently allowed Jacob and other students to take a detour from a planned hike to climb a 70-foot snow. Just to clarify, you've agreed that Wingate was a health care provider for purposes of the statute. Is that correct? We have. We have agreed that Wingate is a health care provider when they were conducting individual counseling and traditional group therapy sessions. We have not conceded that they were a health care provider when they were providing wilderness experiences like hiking and rock climbing. And that the Utah case law makes clear that an entity can be a health care provider for one purpose and not for another purpose. And that the claim, whether it's going to fall under the Utah Health Care Malpractice Act, must arise out of health care, must arise out of conduct that the entity was conducting as a health care provider. As I understand their services, they're wilderness therapy providers. So in a sense, I suppose it's an alternative means of therapy and counseling. And as I understand their program, a primary aspect of is exposure to the outdoors and to the wilderness. And that includes camping out. What you and I would do if we went on an extended camping trip. So hiking, climbing, fishing, putting tents up, sleeping in tents, breaking it down, those sorts of things. And if that's part of their therapeutic services, that it's designed to help individuals that might benefit from that, why wouldn't what happened here, hiking, climbing, be right within what they disclosed to the Scots and other users of their services? Some folks find bowling therapeutic. We don't dispute that what Wingate offered was to help these youth. But health care has a specific statutory definition. And wilderness therapy doesn't fall within it. So any act or treatment performed or furnished which should have been performed or furnished by any health care provider, and then it goes on to say it's conduct that's rendered or which could have been rendered by the health care provider. That's a pretty broad statutory term. It's a statutory term that refers to a list of specifically named providers. The statute says that health care is an act or treatment performed or furnished by. And then it refers to subsection 12 of the same section to say it's got to be an act or treatment performed by this list. And that list includes hospitals. It includes optometrists and nurses. I thought you had conceded that they were a health care provider, though. We have conceded that they are a health care provider. We're just talking about the services here, aren't we? We've conceded, Your Honor, that they were a health care provider as they provided individual counseling and traditional group therapy. And we concede that because we have to look at that list of providers given in the act, which includes marriage and family therapists and social workers. And conduct and services that are performed by those types of providers do include counseling. They do include group therapy sessions. But there is no. Tell me why hiking and or physical activity would be excluded from any act or treatment. If we're going to write a decision in your favor reversing the district court, we've got to clearly explain why the statute doesn't apply, why it applies to group therapy in attempt with the counselor at this program versus not on a hike. Yes. Because, Your Honor, it must be any act or treatment that is provided by one of the listed providers. None of the providers listed in the act offer wilderness excursions. None of the doctors don't, optometrists don't. We could go through the whole list. None of them offer those acts or treatments. None of them offer rock climbing. And health care is defined not only as any act or treatment, but any act or treatment provided by the listed health care providers. And you can go down each one on the list, and none of them provide wilderness therapy. Well, then why are they a health care provider at all? I'm not, we're probably talking by each other. It seems to me that you're arguing against the concession that I thought was in the record that they are a health care provider. Perhaps an analogy would be helpful. And the case that we've cited in the brief that I think is most helpful on this analogy is the Corson case out of New York, where there was a patient in a hospital who received surgery. And after the surgery, his doctor said, or her doctor said, it's appropriate for you to now get up and be walking around. That required medical judgment of the doctor to gauge that it would be helpful for your recovery to get up and walk around. Then we had a nurse practitioner who took the patient for a walk, allowed the patient to go unattended into a restroom, and fell. The court said, yes, the hospital is a medical care provider. And it took medical expertise to know that post-surgery, you are now well enough to walk around. But the hospital was not acting as a medical care provider when, on that walk, they left the patient unattended to fall. Here, Wingate gave medical care. They did counseling sessions. And they did a treatment plan, and in fact, said that part of Jake's treatment should include hiking. They didn't mention rock climbing, but they did say hiking. That was exercising medical judgment to say it would be beneficial for you to go hiking. But when you then turn Jake over to unlicensed staff to go hiking and leave him unattended, there was no medical care, no medical judgment being provided in that decision. And so, yes, we acknowledge that giving the medical advice was they were a medical care provider at that point. But they were not providing that. You know, I understand that the fact here involves climbing a steep incline or a cliff. But let's say the facility says an hour hike each day is part of the treatment. And you're going to go with unlicensed counselors for this part of the day. And he's on a simple trail, stumbles, and injures himself. Is any injury during the course of the wilderness therapy outside the scope of the act? Or would that be part of health care services? We contend that it would be outside the scope of the act. Because, again, the list of health care providers who we have to refer to to determine what health care is, none of them provide wilderness therapy. Could I just ask? You, again, going back to the statute, is it your position that the statute itself has a plain meaning and that's all that needs to be looked at? It is, Your Honor. Then why do you also rely on the legislative history? The statute's plain. There wouldn't be any need to do that. So that's why I'm asking the question. Is it you're looking at the legislative history because the statute needs further explanation? Or does the statute support your position standing on its own? The statute supports our position standing on its own because the statute requires for a claim that you be a health care provider and that the claim arises out of health care being rendered. Because there are two prongs, you can be a health care provider and yet have a claim that does not arise out of health care that's being rendered. Well, I'm with you up to that point, I think. At least I understand how we're getting to that point. But the phrase health care, why is it plain that it doesn't cover hiking? Again, and I apologize for saying it again, but I will read the language of subsection 10, defining health care. Health care means any act or treatment performed or furnished, or which should have been performed or furnished by any health care provider. OK, you've conceded that Wingate is a health care provider. For a limited purpose, that they were a health care provider when they gave counseling. OK, if a licensed counselor is on the hike and they're having a conversation about the various medical treatment issues that are at issue here with the typical patient, they're on a hike with a doctor, engaged in psychotherapies. Is that covered by the act or not? If the doctor was on the hike and gave psychotherapy statements that caused an injury, we would say it would be covered. But if the doctor says it would be well for you to go on a hike, the hike is not health care. And I would refer the court to this. What if the doctor says, go on the hike, because I think it will clear your mind so we can have a better discussion when you get back. And in fact, that's essentially what happened here. Why isn't that covered by the act? It's prescribed by a doctor. I think the fact that there's an unlicensed counselor along is probably immaterial. But if it's under the doctor's instructions, doesn't that get us into the broad terms of the act? If you look at the Smith case, I should give you Smith versus Four Corners. And in that case, didn't the Supreme Court separate out foster care services from mental health care services and said, mental health care is your health care provider for mental health care services, but not for foster care services? And then it looked at the claim to see, which one is it? You just made my point, Judge McHugh. I've been waiting for you to make that point. I'm grateful for the opportunity. And I'll restate it. The Utah Supreme Court's acknowledged that you can have a provider who provides health care, in that case, mental health care, but also provides foster care, a different service. And then the court analyzed, which of those two did the claim fall under, the mental health services or the foster care services? And in that case, the court said, actually, the court looked at the specific allegations and said, this falls under the mental health services that you provided. But it analyzed, did it fall under the foster care services? And if you look at the allegations of our complaint, and we're at the motion to dismiss stage, you have to separate it out under Smith. Was this under the mental health services provided in the individual counseling sessions? Or was this under wilderness therapy, which does not qualify? And under our allegations, we only allege negligence in a hike. Assume, just for this question, that the panel disagrees with you about hiking. But could you draw, nonetheless, a distinction between hiking, on the one hand, and what happened here, which was, in a way, a departure from the hike to climb the rock formation? Is that a viable distinction? I believe that the initial one is more meaningful, that whether we are doing health care counseling versus any sort of wilderness therapy. But there is an additional viable distinction that, at the time when your treatment plan, as in Jacobs, said hiking, and now we have admittedly gone outside of the treatment plan to rock climbing that wasn't planned, wasn't in the treatment plan, that yes, we've removed ourselves even a step further from the health care. Is the distinction the supervision involved? Or is it the danger involved? I'm about to run out of time. Go ahead and answer my question. Thank you, Your Honor. The distinction is on the type of service provided. And the statute, the legislature fairly uniquely said, in the statute itself, here is our purpose. Our purpose is to make sure that there is affordable medical malpractice insurance for health care providers. Is there any evidence in the record about whether Wingate was covered by its malpractice insurer for the wilderness aspects of its operation versus the counseling aspects in terms of malpractice? We were at the motion to dismiss stage, and so no discovery had been done. There is no evidence in the record. But I think that the inference is, logical inference, is that medical malpractice insurance does not cover a doctor giving hiking advice. And really, the distinction is, are we exercising medical judgment in a way that would be covered by medical malpractice insurance? Or are we doing some other service that may be beneficial, but it's not health care? And if the legislature wants to include wilderness therapy as health care, it would need to amend the list of providers to include one that provides wilderness therapy or one that does something similar, that the definition of health care relies on that list. Ultimately, this case is about a statute of limitations, a two-year versus three-year statute of limitations. Here, there was really no mystery about the injury and the causes of the injury. And was there any impediment to your client bringing a claim within the two-year versus the three-year statute of limitations as a practical matter? Practically, what was going on during the time was Jacob returning to Virginia for extensive treatment and surgeries and a family who was focused on that recovery and had been told wilderness therapy is not health care. And they looked to the personal injury statute of limitations in Utah, which is four years, and focused on Jacob before focusing on the claim. All right, counsel. Thank you. Let's hear from Wingate. Thank you. Nathan Crame, a Utah State alum on behalf of Wingate. Oh, welcome. Thank you. Double ags today. That's right. May it please the court, the injury sustained by Jacob Scott on March 6, 2015, arose from or was related to health care provided by Wingate. OK, let me stop you there. In the statute and in the cases, they vary few, maybe a couple cases, interpreting the statute. We do look to the list of providers in the statute that are identified specifically as health care providers and then other people who provide similar services. Would you agree with that? Correct, yes. OK, Wingate is a health care provider because one of the things it does is it provides counseling. And there's people in that list who provide counseling. Can you point to anyone in that list that provides wilderness therapy? Wilderness therapy is not specifically delineated. Well, but if it's more similar, is there anybody in that list that provides something similar to wilderness therapy? You can point to physical therapists who routinely. Well, that's not similar. I've been to physical therapy. Well, sure. It is in the fact that you're ordered by a physical therapist to move, to get on a bike, to get on a treadmill, to walk. The physical therapist is right there with you, bending your knee and supervise, right? Sure. But they're also, you know, when I had knee surgery, I was told to go ride my bike. I didn't need a doctor with me right there riding my bike. And everyone's told, you know, I have high blood pressure, a glass of red wine is recommended. You know, if I drink the whole bottle, can I sue my doctor for malpractice because he's made me an alcoholic? I mean, there are limits, right? I understand that. Sure, there are limits. But what we have here is wilderness therapy is unique. This isn't an outpatient program where you go and see your therapist and then you leave. And you can turn the switch on for when you're in therapy and you can turn it off for when you're outside of therapy. What we have is a program that is designed to incorporate a lot of different aspects. Well, but does it cover, does everything that happens during the program constitute health care? And that's a good question. And I would say no. I would think we can come up with hypotheticals where it would not be covered, including let's say. Give us the limiting principle that would help us, you know, draw the line. We're going to have to draw the line in this case for sure. Sure. You know, Smith and Dowling, some of the others will help us. But how are we going to draw the line in this case? Well, if you have a counselor, if you have a counselor that assaults a student, a patient, that would not be health care. A counselor that. Is that an intentional tort rule that you're suggesting? I'm saying that's not health care is what I'm suggesting. And it wouldn't fall, it wouldn't fall with under the Utah Health Care Malpractice Act for that type of incident. And other sites, you know, there was an example in the cases about a doctor stealing from a patient out of their wallet. If that were to occur, that's not health care. Let's get it a little closer to what happened here. So the teenagers are out on a hike with two staff members. One of the staff members leaves for a brief period of time, is my recollection. But in any event, one was still there. They come upon the rock formation. The kids want to climb the rock formation. And they say, can we climb the rock formation? And staff member says, go at it. That's our case, right? That's what's alleged in the complaint, yes. All right, but those are the facts that we have. Those are the facts that we have for today. And it's your position that climbing the rock formation is health care. What we have is. Well, is it health care or not? It is. And this is the reason why, Judge Mapp. Jacob Scott met with a licensed therapist. And that licensed therapist came up with a treatment plan Is this Mr. Hess? Correct. He's a marriage and family counselor person. Correct. And that position is specifically delineated as an individual that is a health care provider. He's looking at treating Mr. Scott for anxiety, controlled substance addiction, parent-child relationship issues, and disruptive behavior. And in his determination and in that treatment plan, he says that this individual needs individual and group therapy, needs weekly psychoeducational therapy, needs daily psychoeducational and process groups, including hiking and exercise and full immersion in the wilderness program. Where's climbing the rock formation in that list? Well, that's where we come to the implementation of the treatment plan. All right, what if they were on the hike and the kids say, oh, look, there's a cliff. We want to go cliff diving. Is that health care if the staff member says, yeah, go ahead. That's part of an outdoor experience. Go jump off the cliff. You would have to look to that individual's treatment plan. Well, how is it different than the one you just described from Mr. Hess? Exercise is what specifically was required. And full immersion in the wilderness program. Why isn't cliff diving exercise? Is that health care? I mean, where are you going to draw the line? That's the question. Well, we have a rock formation here. You don't want to draw the line. No, no, we need to draw a line. OK, let's draw it. Why isn't it drawn at the rock formation? Because of this particular rock formation. It's not one that you need harnesses and have to go scale. It's one you can walk up without using your hands. It's not this grand scale that you see. Is that really what the Utah legislature had in mind when they passed this statute? That health care is going to cover rock climbing? Let me ask you this. I'll ask you the same question I asked counsel. Is the statute plain on this point? Are you arguing that it has a plain meaning that supports your position? Correct. And what we're getting back to here is looking at. So the legislative history is irrelevant? The legislative history cited as irrelevant because this statute was passed in 1976. I asked if the legislative history is irrelevant to understanding what the statute means. Yes. What about the purpose stated in the statute itself? That that's irrelevant to keep medical malpractice costs low for carriers? No, I don't think that's irrelevant. Then is it relevant whether or not Wingate's malpractice insurance covers rock climbing? That's not part of the record, but it's one insurance policy that covers everything that we do. The record is what it is because this was thrown out on a motion to dismiss. And so my question is, when the legislature states in the statute itself what the purpose is, if the purpose is to keep malpractice costs down,  cover the rock climbing, the rock climbing as malpractice? I don't think so. Why not? Because what an insurance company does or does not do, what they cover or do not cover, doesn't impact the law. It doesn't impact the court's decision. It may be informative. It may be helpful. But it's not persuasive, and it's not binding authority on the court. It may be instructive. There is ongoing litigation out there against insurance companies over whether or not they're going to cover wilderness therapy programs. It's something that's being disputed. Insurance companies love to deny claims. And they pay for some of these claims. They deny other claims. I don't think that's helpful to this court in analyzing whether or not what we are providing is, in fact, health care. Well, let me take you back to the treatment plan, which I have in front of me. I don't see here anywhere the word hiking or exercise. You look to the declaration of Mr. Hess that was submitted in the appendix. Well, I'm looking at the actual treatment plan. Correct. Which was actually signed after the accident, correct? It was prepared before, but signed afterwards. That's correct. He did say in there that experientially, as part of immersion in the wilderness program, Mr. Scott will learn and implement wilderness skills and activities that will contribute to his increased confidence, problem-solving ability, and self-care. This is clinically designed to include both the wilderness aspects and the individual and group therapy. They're designed to work together. At a fundamental level, we are teaching our patients and students that they can do hard things. When they get out of the program and are in real-world situations, they can look back when they're tempted to use drugs. They can go back to their experiences that I've participated in climbing, and hiking, and survival skills. I lived in the wilderness for eight weeks. Well, counsel, let's get back to the statute, all right? It seems both of you think that the text is playing. Both of you think it supports your position. And what I'm not understanding just yet is even though Wingate considers hiking part of the overall therapeutic program, why does Wingate get to decide that hiking equals health care? Isn't that a decision that the legislature has to make? I don't think the legislator gets to decide what health care is and what isn't. I don't think we don't want our doctors taking directions from legislators. The legislature wrote the statute. The legislature said if you've got a medical malpractice claim under these circumstances, you've got to do these things. And for the legislature to impose that requirement, it has to have some idea of what health care is. And yet it seems like Wingate wants to come along and say, well, it must involve hiking. It must involve rock climbing. But how do we know that that's what the legislature had in mind? Well, that's where I think that it's beneficial in this case to have an expert to be able to opine on this treatment plan and whether it was appropriate to prescribe hiking. Take me back to the statute. Point to me in the statute where it plainly says that health care covers the hiking or rock climbing that took place in this case. This statute is very broad. It doesn't specifically have that language. That's right. And it could be interpreted to cover, and it could be interpreted not to cover. Wouldn't you agree? Therefore, it's not plain. If it could reasonably be interpreted to cover or not cover, it's not plain, is it? Isn't that the very definition of a statute that's not plain? That is certainly one way to look at it. Well, if we look at it that way, then don't we need to go beyond the statute? Isn't that a basic of statutory interpretation? But looking to where? The legislative history here is not helpful. Why not? Because it was in 2002, this statute and this language was enacted in 1976. But they were amending the statute. There's a colloquy on the floor between Senator Valentine and Senator Waddups about the scope of the statute. Why isn't that relevant? For two points. Number one, they were seeking to amend House Bill 112, was seeking to merely clarify that a health care facility was a health care provider. That's all that the amendment was in 2002. And so now we have one legislator opining on what he thinks is. And this circuit has indicated, or excuse me, the Utah Supreme Court has indicated that one senator's opinion on an act isn't necessarily dispositive and doesn't suggest what the legislative history is. That's why the legislative history here cited is not helpful. And if we wanted to get to the true meaning of why that particular health care definition was given, we'd have to go back to 1976. And unfortunately, the legislative history for 1976 is not available. Are there any disputed facts in this case, or is this purely an interpretive question about the coverage of the statute? At this point, we take the complaint as alleged as true. We have not had a chance to file an answer. I would assert there are disputed facts. But as far as the coverage of the statute, there are disputed facts? The coverage of the statute, no. Then why wouldn't this case be more appropriate for the Utah Supreme Court to decide then? Here we are with the Tenth Circuit. It's a Utah statute. It's an important issue. Why is this a case for the Utah Supreme Court? Well, we have two points. Number one, we have the appellant conceding that Wingate is a health care provider, without exception in their opening brief. It's not until the reply that they add the caveats of, well, they're only a health care provider when you're sitting with your counselor. And so we've had a bit of a moving target there. And as our preservation argument in the brief points out, this is a new issue that was not considered by the district court, as those issues have been abandoned. But we feel that the statute is sufficiently clear in that it's broad and does cover. What we have here is looking at that treatment plan. Was it medically appropriate to prescribe immersion in wilderness therapy and hiking and exercise? I'm still trying to come up with a limiting principle here. And I think, actually, there was some concession that a hike could be therapeutic. And given what your client does, I can see that. And so maybe one way to draw the line is that rock climbing is prescribed by a mental health counselor. And I think that's really ultimately your position, that everything that they do is part of the treatment plan. But is there any limit to that scope? I'm kind of riffing off what Judge Matheson was saying. Well, what if the doctor says, you're going to face tough situations in the world outside of the program? I want you to scale this cliff. I want you to scale it without safety equipment. I want you to scale it at dusk. And by God, if you survive that, you're going to be a tougher individual in the real world. Is that health care? We're not the Navy SEALs. And I agree, there has to be a line drawn. And I'm trying to get to how to draw that line. What we're looking at is the implementation of what the treatment plan was. What is that reason? Bungee jumping, jumping off a cliff, it's hard to argue that those are health care related. But here we have hiking and exercise, and that's exactly what happened. And whether or not it was appropriate to hike up to the top of this rock formation or not, that's where we come to the help of experts to find whether or not that was an appropriate treatment plan. And that's why we believe we fall under health care and the Utah Health Care Malpractice Act. Thank you. Counsel, we appreciate the arguments. Is there any rebuttal time left? No rebuttal, so counsel are excused. I think the arguments were helpful. We were scheduled for a question and answer at 11.45. It's now past that. What I'd like to do is for the courts going to take a recess. We're going to go and remove our robes. We're going to come right back out, and we'll do a Q&A till about 12.20. OK?